1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SOPHEAR OM,

11              Petitioner,                    No. CIV S-10-2859 JAM CHS

12        vs.

13   G.D. LEWIS,

14              Respondent.

15                              FINDINGS AND RECOMMENDATIONS

16   _____/

17                              I.  INTRODUCTION

18              Sophear Om, a state prisoner, proceeds pro se with a petition for writ of habeas

19   corpus pursuant to 28 U.S.C. § 2254.  At issue are his 2007 convictions in San Joaquin County,

20   case number SF10104A.

21                      II.  FACTUAL AND PROCEDURAL BACKGROUND

22              On July 19, 2006, Om, a member of the Tiny Rascal Gang ("TRG"), approached

23   the victim and made gang comments. Om shot the victim with a semi-automatic handgun and

24   struck the victim's head with the gun.  The victim survived but suffered serious injuries.  At the

25   preliminary hearing on September 6, 2006, Om made threatening gestures and comments toward

26   the victim.

                                        1

1    For these two incidents, a jury convicted Om of premeditated attempted murder,

2    assault with a semiautomatic firearm, two counts of active gang participation, possession by a

3    felon of a firearm, and dissuading a victim.  The jury found the shooting was for the benefit of a

4    gang and that Om personally used, discharged and caused great bodily injury with a firearm.  Om

5    admitted that he had incurred a prior serious felony conviction.  The trial court sentenced him to

6    an aggregate term of 73 years to life.

7    On appeal, the California Court of Appeal, Third District, affirmed the

8    convictions but found an error of state law in the sentence.  *See People v. Om*, No. C057184,

9    2009 WL 1076884 (Cal. App.3d April 22, 2009).  As modified, Om's aggregate sentence is 16

10   months plus life, plus an additional sentence of 39 years to life.  A petition for review to the

11   California Supreme Court was denied.

12                          III.  GROUNDS FOR RELIEF

13   Incorporating his state appellate brief into his federal petition, Om claims the trial

14   court erred in violation of California law, the Sixth Amendment, and federal due process when it

15   denied defense counsel's petition to release confidential juror information to enable the defense

16   to develop and file a motion for new trial.[1]

17                     IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

18   An application for writ of habeas corpus by a person in custody under judgment of

19   a state court can be granted only for violations of the Constitution or laws of the United States.

20   28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

21

22         [1] Om's incorporated state brief also asserts the claim of sentencing error that, as
23   discussed, was corrected on direct review. Because the alleged error was corrected by the state
     appellate court and not exhausted by being presented to the California Supreme Court, and
24   further because federal habeas corpus does not lie to correct errors in the application of state law,
     the claim need not be addressed herein.  *See* 28 U.S.C. § 2254(b)(1) (setting forth the exhaustion
25   requirement); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[I]t is not the province of a federal
     habeas court to reexamine state-court determinations on state-law questions. In conducting
26   habeas review, a federal court is limited to deciding whether a conviction violated the
     Constitution, laws, or treaties of the United States.").

1  *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

2  This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

3  the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521

4  U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under the

5  AEDPA, federal habeas corpus relief is also precluded for any claim decided on the merits in

6  state court proceedings unless the state court's adjudication of the claim:

7          (1) resulted in a decision that was contrary to, or involved an
           unreasonable application of, clearly established Federal law, as
8          determined by the Supreme Court of the United States; or

9          (2) resulted in a decision that was based on an unreasonable
           determination of the facts in light of the evidence presented in the
10         State court proceeding.

11  28 U.S.C. § 2254(d); see also *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

12  *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

13          This court looks to the last reasoned state court decision to determine whether the

14  law applied to a particular claim by the state courts was contrary to the law set forth in the cases

15  of the United States Supreme Court or whether an unreasonable application of such law has

16  occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919.  The

17  state court's factual findings are presumed correct if not rebutted with clear and convincing

18  evidence. 28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004).  It is

19  the habeas corpus petitioner's burden to show the state court's decision was either contrary to or

20  an unreasonable application of federal law. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

21                              V.  ANALYSIS OF THE CLAIM

22          A.      Additional Background[2]

23          On Thursday, August 2, 2007, a gang expert testified at trial that TRG "is the

24  largest Asian criminal street gang in the nation," and has 65 "documented" members in Stockton.

25  _____

26          [2] *See People v. Om*, 2009 WL 1076884, at 2-3.

He described some violent crimes committed by TRG members and identified Om as a member of the gang.

During a break in the expert's testimony, Juror No. 7 asked to speak with the trial court. Outside the presence of the other jurors, she told the trial court she felt "kind of weird about the gang thing. I don't feel comfortable, you know, hearing more and more about it. I just- I'm a single mom and I get worried about retaliation and so I just wanted to let you know that." The trial court told Juror No. 7 that juror information was protected and would not be disclosed absent a formal motion, and that such motions were rarely granted. Juror No. 7 then described how frightened the victim seemed while testifying about the courthouse threats.

After discussing the matter with counsel, the trial court brought Juror No. 7 back into the courtroom and told her that juror names were redacted from the transcript. When the trial court asked her if she had formed fixed opinions, Juror No. 7 said she could be fair and listen to both sides, but gang retaliation "just kind of worries me, and I don't know if I'm the only one that feels that way. I haven't talked to anybody else about it." After further questioning, and after again speaking with counsel in her absence, the trial court told Juror No. 7 that, after the evidence was in, the court would speak with her again to see if she could still keep an open mind during deliberations. She was told not to speak about her concerns with other jurors and she agreed not to.

The next day, Friday, August 3, 2007, before deliberations began, the trial court questioned Juror No. 7 in detail, and she said she could pay attention to the evidence and arguments and deliberate fairly. She said she felt better after speaking with the trial court the day before. The trial court denied a defense motion to discharge her.

According to the minutes and comments by the trial court, the jury deliberated for approximately an hour on that Friday. The verdict forms on counts 2 through 6 bear Friday's date, "8-03-07." On the following Monday, after approximately one more hour of deliberations, the jury reported it had reached its verdicts. The verdict forms pertaining to count 1 are dated that

1  Monday. After the verdicts were read, the jury was polled and all the jurors assented to the

2  verdicts.

3          Before sentencing, defendant filed a new trial motion which partly alleged that

4  during deliberations, Juror No. 7 told the other jurors her house "had been 'shot up' over the

5  weekend. [Juror No. 7] failed to inform the Court of this crime that had [been] committed against

6  her." Defendant also petitioned for access to juror information, alleging counsel needed to

7  contact jurors to further develop the new trial motion.

8          In support of the new trial motion and the petition for access to juror information,

9  defendant's trial counsel filed her own declarations, but no juror declarations. Counsel's

10  declarations state that after the jury verdicts, Juror No. 7 "immediately walked up to Detective

11  Slater, the investigating officer in this case, and to Detective Gutierrez, the gang expert, and

12  asked to speak with them privately. Other jurors, including [Juror No. 11], told me that [Juror

13  No. 7] had told the jurors that the house in which [Juror No. 7] lived had been 'shot up' over the

14  past weekend. [¶] ... The prosecutor informed me that the Detectives subsequently went to [Juror

15  No. 7's] house and determined that the incident was coincidental to this case and was not gang-

16  related. A report was not written."

17          In support of the People's opposition, the prosecutor provided a declaration from

18  Juror No. 1, which in part stated that "at no time did [Juror No. 7] disclose information

19  concerning any events at her residence over the weekend of August 4-5, 2007[,] during

20  deliberations." "[A]ny information received by myself and the other jurors regarding any events

21  at the residence of [Juror No. 7] over the weekend of August 4-5, 2007[,] was received after the

22  jury deliberations were completed, the jury verdicts were signed, the jury had notified the court

23  of the reaching of verdicts in the case and all jurors confirmed that the deliberations on the case

24  before them were complete."[3]

25

26  [3] The prosecutor asserted the incident involved vandalism. The state appellate court found
no evidence to support the prosecutor's claim in this regard and further indicated there was "no

5

1      At the hearing, defense counsel did not dispute Juror No. 1's declaration, but

2  argued that until the verdicts were read, they were not final, and jurors may have improperly

3  adhered to a verdict that otherwise may have been disavowed. Defense counsel conceded jurors

4  are not told to report if they have been victimized by crime, but argued they had a duty to report

5  if they could not remain fair. The prosecutor argued Juror No. 7 had specifically told the court

6  she could be fair and put aside her concerns about retaliation, and Juror No. 1's declaration

7  showed the discussion about the "event," whatever it was, took place after all of the verdicts had

8  been signed and, therefore, there was no prejudice.

9      The trial court denied defendant's petition for release of juror information, stating

10  "the failure to disclose being a crime victim is not misconduct" because the jurors had not been

11  ordered to disclose such information. Further, "[i]t seems reasonably clear to the Court that had

12  she thought anything that happened over the weekend was related to this case that she would

13  have come forward in light of the fact that she had expressed concerns about retaliation before."

14  Finally, the alleged discussion took place after the verdicts were signed and did not affect them.

15      B.      Discussion

16      The applicable state standard for the post-trial unsealing of juror information is

17  contained in section 237(b) of the California Code of Civil Procedure.  A party seeking to unseal

18  juror personal information must establish "a prima facie showing of good cause for the release."

19  Cal. Code Civ. Proc. § 237(b).  Good cause means "a sufficient showing to support a reasonable

20  belief that jury misconduct occurred, that diligent efforts were made to contact the jurors through

21  other means, and that further investigation is necessary to provide the court with adequate

22  information to rule on a motion for new trial."  *People v. Rhodes*, 212 Cal.App.3d 541 (1989)

23  (superceded by statute).  Although *Rhodes* was decided before the enactment of present section

24  237, its test "survived the amendment."  *People v. Carrasco*, 163 Cal. App. 4th 978, 990 (2008).

25

26  explanation why Juror No. 1's declaration was elliptical about this."  *People v. Om*, 2009 WL
1076884, at 3 n.2.

1    A trial court's ruling on a section 237(b) request is subject to review only for abuse of discretion.

2    *Id*.

3                  Applying section 237(b) and the *Rhodes* test, the California Court of Appeal held:

4                  We conclude the trial court's ruling denying the petition fell within
                   the trial court's discretion. Defense counsel failed to show she
5                  acted with diligence to contact jurors, and failed to show a
                   reasonable basis to believe disclosing juror information would lead
6                  to admissible evidence of misconduct.

7                  Appellate counsel asserts trial counsel did not know any juror
                   names and was "unable to speak" with Juror No. 7 at the
8                  courthouse because Juror No. 7 was speaking with the police. Trial
                   counsel's declarations do not support either of these claims. Trial
9                  counsel declared that Juror No. 11 and unidentified "other" jurors
                   spoke to her after the verdicts, but she did not explain what she did
10                 in response, such as asking for their contact information or if they
                   would provide a declaration. In this connection, defendant
11                 inappropriately faults the prosecutor for obtaining and submitting
                   Juror No. 1's declaration. Defendant argues that it was unfair that
12                 the prosecutor was able to get a declaration from Juror No. 1, and
                   asserts that defendant was deprived of "reciprocal discovery"
13                 rights. The record does not support the claim that the prosecutor
                   had any greater access to information than defense counsel.
14                 "[C]ounsel and investigators routinely interview jurors before they
                   leave the courthouse. Parties also have access to other means, like
15                 a public telephone directory." (*Rhodes, supra,* 212 Cal.App.3d at p.
                   553.) We agree with the Attorney General that the fact a juror gave
16                 a declaration to the prosecutor does not show the prosecutor had
                   unfair access to information. If anything, it demonstrates that juror
17                 declarations are commonly obtained without a petition for juror
                   information. Because the record does not show what steps, if any,
18                 defense counsel took to contact jurors, the petition fails to show
                   counsel acted with diligence. (See *Jones, supra,* 17 Cal.4th at p.
19                 317.)

20                 Nor did the petition show a reasonable basis to believe disclosure
                   would result in *admissible evidence* of jury misconduct, as opposed
21                 to speculation.

22                 Contrary to appellate counsel's claim, the petition failed to
                   provide, as a preliminary matter, any admissible evidence of
23                 misconduct. The trial court made two observations about evidence,
                   and both were correct. Initially, after mentioning Evidence Code
24                 section 1150, the trial court referred to a prohibition on considering
                   hearsay evidence. Because defense counsel failed to get *any* juror
25                 declarations, what evidence she tendered was hearsay, in her own
                   words, what "[o]ther jurors, including [Juror No. 11], told me that
26                 [Juror No. 7] had told the jurors." Counsel's declarations were

inadmissible hearsay. (*People v. Cox* (1991) 53 Cal.3d 618, 697-698, disapproved on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *People v. Villagren* (1980) 106 Cal.App.3d 720, 729; see CJER Bench Handbook: Jury Management (CJER 2008 rev.) Jury Deliberations, § 3.27, p. 95.) Later, after defense counsel stressed the need to contact jurors to determine if what Juror No. 7 said influenced them, the trial court stated, "[T]hat would not be admissible evidence in a new trial motion, whether or not it influenced that juror." That, too, was a correct statement. (Evid.Code, § 1150, subd. (a); *In re Hamilton* (1999) 20 Cal.4th 273, 294 (*Hamilton*) ["evidence that the internal thought processes of one or more jurors were biased is not admissible to impeach a verdict"]; see *People v. Steele* (2002) 27 Cal.4th 1230, 1260-1264 (*Steele*) [rejecting federal state challenges to this evidentiary rule].)

Nor did the record provide a basis to believe any admissible evidence supporting a tenable claim of juror misconduct could be obtained by granting the petition. Assuming Juror No. 7's house actually was "shot up" over the weekend and that she told the other jurors about it, her statement would not have been admissible for purposes of a new trial motion. By statute "any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly." (Evid.Code, § 1150, subd. (a).) Thus, what Juror No. 7 said during deliberations would be admissible only if it was "of such a character as is likely to have influenced the verdict improperly." (*Ibid.*; see *People v. Hedgecock* (1990) 51 Cal.3d 395, 419 ["In rare circumstances a statement by a juror during deliberations may itself be an act of misconduct, in which case evidence of that statement is admissible"].)

The trial court properly concluded that Juror No. 7's statement would not "improperly" influence the verdicts.

First, the *admissible* information about whatever Juror No. 7 did say was provided by Juror No. 1's declaration. This did not reveal what Juror No. 7 said, but clearly stated that whatever she said was said "after the jury deliberations were completed, the jury verdicts were signed, the jury had notified the court of the reaching of verdicts in the case and all jurors confirmed that the deliberations on the case before them were complete." Although defendant faults the trial court for purportedly resolving a factual *dispute* in accepting Juror No. 1's declaration, the trial court had no dispute to resolve: Juror No. 1's declaration was not contested by any evidence, and defense counsel did not challenge that declaration at the hearing; she instead argued the timing of Juror No. 7's statement was irrelevant. In the absence of any basis to believe Juror No. 7's statement was made before the jurors "confirmed that the deliberations ... were complete," *nothing* she said could have

1    "improperly" affected the verdict.

2    Jurors have life experiences, and discussing them during
     deliberations is not of itself misconduct. (*Steele, supra,* 27 Cal.4th
3    at pp. 1259-1260, 1265-1267 [jurors who were veterans told others
     about their interpretations of military records; not misconduct];
4    *Hamilton, supra,* 20 Cal.4th at p. 296 ["'virtually impossible to
     shield jurors from every contact or influence that might
5    theoretically affect their vote'"].) The fact Juror No. 7 had been a
     crime victim was not misconduct, and because jurors had not been
6    instructed to report such incidents, her failure to do so was not
     misconduct. (See *Hamilton, supra,* 20 Cal.4th at pp. 304-305
7    [alleged fact that juror failed to report that she saw defendant's
     agents lurking by her house during trial was not misconduct].)
8
     Indeed, the trial court found that based on his questioning of her
9    before deliberations, if Juror No. 7 had believed whatever
     happened would influence her, she would have known to report it.
10   That was a reasonable finding. (See *Hamilton, supra,* 20 Cal.4th at
     p. 306 ["This state of the record weighs against any assumption
11   that [a juror] found the incident sufficiently unsettling to affect her
     trial impartiality"].)
12
     Thus, defendant's theory of admissibility of the hoped-for evidence
13   from other jurors was based on speculation about their reasons for
     convicting defendant, not based upon a tenable claim that external
14   information improperly influenced the verdict.

15   Given counsel's lack of diligence, the lack of preliminary evidence
     of jury misconduct, and the lack of a nonspeculative theory of jury
16   misconduct, the trial court acted within its discretion in denying the
     petition to release juror information.

17

18   People v. Om, *supra,* 2009 WL 1076884, at 4 -6 (footnote omitted).

19                          1.    California Law

20          To the extent Om premises his claim on alleged violations of state law or errors

21   in its application, no relief is available.  The California court's interpretation and application of

22   its own law is binding on this court.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have

23   repeatedly held that a state court's interpretation of state law, including one announced on direct

24   appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

25   /////

26   /////

                                           9

1          2.          Sixth Amendment

2          Citing the Sixth Amendment and *Strickland v. Washington*, 466 U.S. 668 (1984),

3    Om claims "[t]he trial court's ruling deprived [him] of effective assistance of counsel because

4    counsel could not conduct an adequate investigation into juror misconduct."

5          To demonstrate a denial of the Sixth Amendment right to the effective assistance

6    of counsel, a habeas corpus petitioner must establish that counsel's performance fell below an

7    objective standard of reasonableness, and that he suffered prejudice from the deficient

8    performance. *Strickland*, 466 U.S. at 690.  Deficient performance requires a showing that

9    counsel's performance was "outside the wide range of professionally competent assistance." *Id*.

10   at 687, 697.  Prejudice is found where there is a reasonable probability that, but for counsel's

11   unprofessional errors, the result of the proceeding would have been different. *Id*.

12         Here, Om challenges the trial court's ruling rather than counsel's decisions or

13   actions at trial.  Om does not allege that trial counsel performed deficiently in connection with

14   the petition for release of juror information or that prejudice resulted from counsel's deficiency.

15   A challenge solely to the trial court's ruling on the matter fails to state a cognizable claim for a

16   Sixth Amendment violation.

17         3.          Due Process

18         Om claims his federal due process rights were violated when the trial court

19   "resolve[d] the conflicts in the facts surrounding allegations of juror misconduct without granting

20   defense counsel the information she needed to contact the jury."  As support, Om cites *Wardius*

21   *v. Oregon*, 412 U.S. 470 (1973), which addresses, as he asserts, the relationship between due

22   process and reciprocal discovery.

23         In *Wardius*, the Supreme Court held unconstitutional an Oregon statute that

24   precluded a criminal defendant's introduction of alibi defense evidence in the absence of notice

25   to the prosecution prior to the start of trial.  *Id*. at 472.  The court held the statute violated due

26   process because it did not provide reciprocal discovery rights for defendants.  *Id*.  *Wardius*

10

1  applies to a state's one-sided requirement that the defense tender to the prosecution pre-trial

2  discovery information; the case does not clearly establish a due process right to post-trial juror

3  information. Application of the rule of *Wardius* does not entitle Om to relief.  *See Yarborough v.*

4  *Alvarado*, 541 U.S. 652, 666 (2004) ("Section 2254(d)(1) would be undermined if habeas courts

5  introduced rules not clearly established under the guise of extensions to existing law.").

6          It further appears that no Supreme Court precedent clearly establishes a due

7  process right to post-trial juror information under the circumstances of Om's case.  The Sixth and

8  Fourteenth Amendments guarantee a criminally accused the right to trial by an impartial jury.

9  *See Duncan v. Louisiana*, 391 U.S. 145 (1968).  Nevertheless, the Supreme Court has recognized

10  "it is virtually impossible to shield jurors from every contact or influence that might theoretically

11  affect their vote." *Rushen v. Spain*, 464 U.S. 114, 118 (1983) (quoting *Smith v. Phillips*, 455

12  U.S. 209, 217 (1982).  "[D]ue process does not require a new trial every time a juror has been

13  placed in a potentially compromising situation." *Smith*, 455 U.S. at 217.

14          When juror partiality is alleged, the United States Supreme Court "has long held

15  that the remedy... is a hearing in which the defendant has the opportunity to prove actual bias."

16  *Smith*, 455 U.S. at 215; *but see Sims v. Rowland*, 414 F.3d 1148, 1153 (9th Cir. 2005) (observing

17  that neither *Smith* nor any other Supreme Court case mandates a hearing when evidence of juror

18  bias is raised).  A thorough search reveals no Supreme Court precedent regarding a criminal

19  defendant's right to compel the release of juror contact information in relation to a post-trial

20  investigation of alleged juror misconduct or partiality.  Absent controlling precedent, Om is not

21  entitled to federal habeas corpus relief.  *Wright v. Van Patten*, 128 S. Ct. 743, 747 (2008) (where

22  there is "no clear answer to the question presented," it cannot be said that the state court

23  unreasonably applied clearly established federal law); *see also* 28 U.S.C. §2254(d)(1).

24          Moreover, the trial court reasonably rejected Om's request for release of juror

25  information.  As discussed by the state appellate court, there was no reliable, admissible evidence

26  on which to base the request.  Granting juror contact information would have facilitated what can

1  only be characterized as a fishing expedition by the defense.  Om fails to demonstrate that the

2  state appellate court's rejection of the claim was contrary to, or an unreasonable application of,

3  clearly established federal law as determined by the Supreme Court.

4  VI.  CONCLUSION

5  For the foregoing reasons, the petition should be denied.  Pursuant to Rule 11 of

6  the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of

7  appealability when it enters a final order adverse to the applicant.  A certificate of appealability

8  may issue only "if the applicant has made a substantial showing of the denial of a constitutional

9  right."  28 U.S.C. § 2253(c)(2).  A substantial showing of the denial of a constitutional right has

10  not been made in this case.

11  Accordingly, IT IS HEREBY RECOMMENDED that:

12  1.  The petition for writ of habeas corpus be denied; and

13  2.  A certificate of appealability not issue.

14  These findings and recommendations are submitted to the United States District

15  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

16  one days after being served with these findings and recommendations, any party may file written

17  objections with the court and serve a copy on all parties.  Such a document should be captioned

18  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

19  within the specified time waives the right to appeal the District Court's order.  *Martinez v. Ylst*,

20  951 F.2d 1153 (9th Cir. 1991).  Any reply to the objections shall be filed and served within seven

21  days after service of the objections.

22  DATED: March 19, 2012

23  *Charlene H. Sorrentino*

24  CHARLENE H. SORRENTINO
   UNITED STATES MAGISTRATE JUDGE

25

26