IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SOPHEAR OM,

    Petitioner,  No. CIV S-10-2859 JAM CHS

    vs.

G.D. LEWIS,

    Respondent.

FINDINGS AND RECOMMENDATIONS

                            /

## I.  INTRODUCTION

Sophear Om, a state prisoner, proceeds pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  At issue are his 2007 convictions in San Joaquin County, case number SF10104A.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On July 19, 2006, Om, a member of the Tiny Rascal Gang ("TRG"), approached the victim and made gang comments. Om shot the victim with a semi-automatic handgun and struck the victim's head with the gun.  The victim survived but suffered serious injuries.  At the preliminary hearing on September 6, 2006, Om made threatening gestures and comments toward the victim.

1

For these two incidents, a jury convicted Om of premeditated attempted murder, assault with a semiautomatic firearm, two counts of active gang participation, possession by a felon of a firearm, and dissuading a victim. The jury found the shooting was for the benefit of a gang and that Om personally used, discharged and caused great bodily injury with a firearm. Om admitted that he had incurred a prior serious felony conviction. The trial court sentenced him to an aggregate term of 73 years to life.

On appeal, the California Court of Appeal, Third District, affirmed the convictions but found an error of state law in the sentence. *See People v. Om*, No. C057184, 2009 WL 1076884 (Cal. App.3d April 22, 2009). As modified, Om's aggregate sentence is 16 months plus life, plus an additional sentence of 39 years to life. A petition for review to the California Supreme Court was denied.

### III.  GROUNDS FOR RELIEF

Incorporating his state appellate brief into his federal petition, Om claims the trial court erred in violation of California law, the Sixth Amendment, and federal due process when it denied defense counsel's petition to release confidential juror information to enable the defense to develop and file a motion for new trial.[1]

### IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

---

[1] Om's incorporated state brief also asserts the claim of sentencing error that, as discussed, was corrected on direct review. Because the alleged error was corrected by the state appellate court and not exhausted by being presented to the California Supreme Court, and further because federal habeas corpus does not lie to correct errors in the application of state law, the claim need not be addressed herein. *See* 28 U.S.C. § 2254(b)(1) (setting forth the exhaustion requirement); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

*Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under the AEDPA, federal habeas corpus relief is also precluded for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

This court looks to the last reasoned state court decision to determine whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919. The state court's factual findings are presumed correct if not rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004). It is the habeas corpus petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

V.  ANALYSIS OF THE CLAIM

A.  Additional Background[2]

On Thursday, August 2, 2007, a gang expert testified at trial that TRG "is the largest Asian criminal street gang in the nation," and has 65 "documented" members in Stockton.

---

[2] *See People v. Om*, 2009 WL 1076884, at 2-3.

3

He described some violent crimes committed by TRG members and identified Om as a member of the gang.

During a break in the expert's testimony, Juror No. 7 asked to speak with the trial court. Outside the presence of the other jurors, she told the trial court she felt "kind of weird about the gang thing. I don't feel comfortable, you know, hearing more and more about it. I just- I'm a single mom and I get worried about retaliation and so I just wanted to let you know that." The trial court told Juror No. 7 that juror information was protected and would not be disclosed absent a formal motion, and that such motions were rarely granted. Juror No. 7 then described how frightened the victim seemed while testifying about the courthouse threats.

After discussing the matter with counsel, the trial court brought Juror No. 7 back into the courtroom and told her that juror names were redacted from the transcript. When the trial court asked her if she had formed fixed opinions, Juror No. 7 said she could be fair and listen to both sides, but gang retaliation "just kind of worries me, and I don't know if I'm the only one that feels that way. I haven't talked to anybody else about it." After further questioning, and after again speaking with counsel in her absence, the trial court told Juror No. 7 that, after the evidence was in, the court would speak with her again to see if she could still keep an open mind during deliberations. She was told not to speak about her concerns with other jurors and she agreed not to.

The next day, Friday, August 3, 2007, before deliberations began, the trial court questioned Juror No. 7 in detail, and she said she could pay attention to the evidence and arguments and deliberate fairly. She said she felt better after speaking with the trial court the day before. The trial court denied a defense motion to discharge her.

According to the minutes and comments by the trial court, the jury deliberated for approximately an hour on that Friday. The verdict forms on counts 2 through 6 bear Friday's date, "8-03-07." On the following Monday, after approximately one more hour of deliberations, the jury reported it had reached its verdicts. The verdict forms pertaining to count 1 are dated that

Monday. After the verdicts were read, the jury was polled and all the jurors assented to the verdicts.

Before sentencing, defendant filed a new trial motion which partly alleged that during deliberations, Juror No. 7 told the other jurors her house "had been 'shot up' over the weekend. [Juror No. 7] failed to inform the Court of this crime that had [been] committed against her." Defendant also petitioned for access to juror information, alleging counsel needed to contact jurors to further develop the new trial motion.

In support of the new trial motion and the petition for access to juror information, defendant's trial counsel filed her own declarations, but no juror declarations. Counsel's declarations state that after the jury verdicts, Juror No. 7 "immediately walked up to Detective Slater, the investigating officer in this case, and to Detective Gutierrez, the gang expert, and asked to speak with them privately. Other jurors, including [Juror No. 11], told me that [Juror No. 7] had told the jurors that the house in which [Juror No. 7] lived had been 'shot up' over the past weekend. [¶] ... The prosecutor informed me that the Detectives subsequently went to [Juror No. 7's] house and determined that the incident was coincidental to this case and was not gang-related. A report was not written."

In support of the People's opposition, the prosecutor provided a declaration from Juror No. 1, which in part stated that "at no time did [Juror No. 7] disclose information concerning any events at her residence over the weekend of August 4-5, 2007[,] during deliberations." "[A]ny information received by myself and the other jurors regarding any events at the residence of [Juror No. 7] over the weekend of August 4-5, 2007[,] was received after the jury deliberations were completed, the jury verdicts were signed, the jury had notified the court of the reaching of verdicts in the case and all jurors confirmed that the deliberations on the case before them were complete."[3]

---

[3] The prosecutor asserted the incident involved vandalism. The state appellate court found no evidence to support the prosecutor's claim in this regard and further indicated there was "no

1    At the hearing, defense counsel did not dispute Juror No. 1's declaration, but
2 argued that until the verdicts were read, they were not final, and jurors may have improperly
3 adhered to a verdict that otherwise may have been disavowed. Defense counsel conceded jurors
4 are not told to report if they have been victimized by crime, but argued they had a duty to report
5 if they could not remain fair. The prosecutor argued Juror No. 7 had specifically told the court
6 she could be fair and put aside her concerns about retaliation, and Juror No. 1's declaration
7 showed the discussion about the "event," whatever it was, took place after all of the verdicts had
8 been signed and, therefore, there was no prejudice.

9    The trial court denied defendant's petition for release of juror information, stating
10 "the failure to disclose being a crime victim is not misconduct" because the jurors had not been
11 ordered to disclose such information. Further, "[i]t seems reasonably clear to the Court that had
12 she thought anything that happened over the weekend was related to this case that she would
13 have come forward in light of the fact that she had expressed concerns about retaliation before."
14 Finally, the alleged discussion took place after the verdicts were signed and did not affect them.

15    B.   Discussion

16    The applicable state standard for the post-trial unsealing of juror information is
17 contained in section 237(b) of the California Code of Civil Procedure.  A party seeking to unseal
18 juror personal information must establish "a prima facie showing of good cause for the release."
19 Cal. Code Civ. Proc. § 237(b).  Good cause means "a sufficient showing to support a reasonable
20 belief that jury misconduct occurred, that diligent efforts were made to contact the jurors through
21 other means, and that further investigation is necessary to provide the court with adequate
22 information to rule on a motion for new trial." *People v. Rhodes*, 212 Cal.App.3d 541 (1989)
23 (superceded by statute).  Although *Rhodes* was decided before the enactment of present section
24 237, its test "survived the amendment." *People v. Carrasco*, 163 Cal. App. 4th 978, 990 (2008).

---

explanation why Juror No. 1's declaration was elliptical about this." *People v. Om*, 2009 WL 1076884, at 3 n.2.

6

A trial court's ruling on a section 237(b) request is subject to review only for abuse of discretion. *Id*.

> Applying section 237(b) and the *Rhodes* test, the California Court of Appeal held:
>
> We conclude the trial court's ruling denying the petition fell within the trial court's discretion. Defense counsel failed to show she acted with diligence to contact jurors, and failed to show a reasonable basis to believe disclosing juror information would lead to admissible evidence of misconduct.
>
> Appellate counsel asserts trial counsel did not know any juror names and was "unable to speak" with Juror No. 7 at the courthouse because Juror No. 7 was speaking with the police. Trial counsel's declarations do not support either of these claims. Trial counsel declared that Juror No. 11 and unidentified "other" jurors spoke to her after the verdicts, but she did not explain what she did in response, such as asking for their contact information or if they would provide a declaration. In this connection, defendant inappropriately faults the prosecutor for obtaining and submitting Juror No. 1's declaration. Defendant argues that it was unfair that the prosecutor was able to get a declaration from Juror No. 1, and asserts that defendant was deprived of "reciprocal discovery" rights. The record does not support the claim that the prosecutor had any greater access to information than defense counsel. "[C]ounsel and investigators routinely interview jurors before they leave the courthouse. Parties also have access to other means, like a public telephone directory." (*Rhodes, supra,* 212 Cal.App.3d at p. 553.) We agree with the Attorney General that the fact a juror gave a declaration to the prosecutor does not show the prosecutor had unfair access to information. If anything, it demonstrates that juror declarations are commonly obtained without a petition for juror information. Because the record does not show what steps, if any, defense counsel took to contact jurors, the petition fails to show counsel acted with diligence. (See *Jones, supra,* 17 Cal.4th at p. 317.)
>
> Nor did the petition show a reasonable basis to believe disclosure would result in *admissible evidence* of jury misconduct, as opposed to speculation.
>
> Contrary to appellate counsel's claim, the petition failed to provide, as a preliminary matter, any admissible evidence of misconduct. The trial court made two observations about evidence, and both were correct. Initially, after mentioning Evidence Code section 1150, the trial court referred to a prohibition on considering hearsay evidence. Because defense counsel failed to get *any* juror declarations, what evidence she tendered was hearsay, in her own words, what "[o]ther jurors, including [Juror No. 11], told me that [Juror No. 7] had told the jurors." Counsel's declarations were

7

inadmissible hearsay. (*People v. Cox* (1991) 53 Cal.3d 618, 697-698, disapproved on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *People v. Villagren* (1980) 106 Cal.App.3d 720, 729; see CJER Bench Handbook: Jury Management (CJER 2008 rev.) Jury Deliberations, § 3.27, p. 95.) Later, after defense counsel stressed the need to contact jurors to determine if what Juror No. 7 said influenced them, the trial court stated, "[T]hat would not be admissible evidence in a new trial motion, whether or not it influenced that juror." That, too, was a correct statement. (Evid.Code, § 1150, subd. (a); *In re Hamilton* (1999) 20 Cal.4th 273, 294 (*Hamilton*) ["evidence that the internal thought processes of one or more jurors were biased is not admissible to impeach a verdict"]; see *People v. Steele* (2002) 27 Cal.4th 1230, 1260-1264 (*Steele*) [rejecting federal state challenges to this evidentiary rule].)

Nor did the record provide a basis to believe any admissible evidence supporting a tenable claim of juror misconduct could be obtained by granting the petition. Assuming Juror No. 7's house actually was "shot up" over the weekend and that she told the other jurors about it, her statement would not have been admissible for purposes of a new trial motion. By statute "any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly." (Evid.Code, § 1150, subd. (a).) Thus, what Juror No. 7 said during deliberations would be admissible only if it was "of such a character as is likely to have influenced the verdict improperly." (*Ibid.;* see *People v. Hedgecock* (1990) 51 Cal.3d 395, 419 ["In rare circumstances a statement by a juror during deliberations may itself be an act of misconduct, in which case evidence of that statement is admissible"].)

The trial court properly concluded that Juror No. 7's statement would not "improperly" influence the verdicts.

First, the *admissible* information about whatever Juror No. 7 did say was provided by Juror No. 1's declaration. This did not reveal what Juror No. 7 said, but clearly stated that whatever she said was said "after the jury deliberations were completed, the jury verdicts were signed, the jury had notified the court of the reaching of verdicts in the case and all jurors confirmed that the deliberations on the case before them were complete." Although defendant faults the trial court for purportedly resolving a factual *dispute* in accepting Juror No. 1's declaration, the trial court had no dispute to resolve: Juror No. 1's declaration was not contested by any evidence, and defense counsel did not challenge that declaration at the hearing; she instead argued the timing of Juror No. 7's statement was irrelevant. In the absence of any basis to believe Juror No. 7's statement was made before the jurors "confirmed that the deliberations ... were complete," *nothing* she said could have

> "improperly" affected the verdict.
>
> Jurors have life experiences, and discussing them during deliberations is not of itself misconduct. (*Steele, supra,* 27 Cal.4th at pp. 1259-1260, 1265-1267 [jurors who were veterans told others about their interpretations of military records; not misconduct]; *Hamilton, supra,* 20 Cal.4th at p. 296 ["'virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote'"].) The fact Juror No. 7 had been a crime victim was not misconduct, and because jurors had not been instructed to report such incidents, her failure to do so was not misconduct. (See *Hamilton, supra,* 20 Cal.4th at pp. 304-305 [alleged fact that juror failed to report that she saw defendant's agents lurking by her house during trial was not misconduct].)
>
> Indeed, the trial court found that based on his questioning of her before deliberations, if Juror No. 7 had believed whatever happened would influence her, she would have known to report it. That was a reasonable finding. (See *Hamilton, supra,* 20 Cal.4th at p. 306 ["This state of the record weighs against any assumption that [a juror] found the incident sufficiently unsettling to affect her trial impartiality"].)
>
> Thus, defendant's theory of admissibility of the hoped-for evidence from other jurors was based on speculation about their reasons for convicting defendant, not based upon a tenable claim that external information improperly influenced the verdict.
>
> Given counsel's lack of diligence, the lack of preliminary evidence of jury misconduct, and the lack of a nonspeculative theory of jury misconduct, the trial court acted within its discretion in denying the petition to release juror information.

People v. Om, *supra*, 2009 WL 1076884, at 4 -6 (footnote omitted).

### 1.  California Law

To the extent Om premises his claim on alleged violations of state law or errors in its application, no relief is available. The California court's interpretation and application of its own law is binding on this court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

/////

/////

2.	Sixth Amendment

Citing the Sixth Amendment and *Strickland v. Washington*, 466 U.S. 668 (1984), Om claims "[t]he trial court's ruling deprived [him] of effective assistance of counsel because counsel could not conduct an adequate investigation into juror misconduct."

To demonstrate a denial of the Sixth Amendment right to the effective assistance of counsel, a habeas corpus petitioner must establish that counsel's performance fell below an objective standard of reasonableness, and that he suffered prejudice from the deficient performance. *Strickland*, 466 U.S. at 690. Deficient performance requires a showing that counsel's performance was "outside the wide range of professionally competent assistance." *Id*. at 687, 697. Prejudice is found where there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*.

Here, Om challenges the trial court's ruling rather than counsel's decisions or actions at trial. Om does not allege that trial counsel performed deficiently in connection with the petition for release of juror information or that prejudice resulted from counsel's deficiency. A challenge solely to the trial court's ruling on the matter fails to state a cognizable claim for a Sixth Amendment violation.

3.	Due Process

Om claims his federal due process rights were violated when the trial court "resolve[d] the conflicts in the facts surrounding allegations of juror misconduct without granting defense counsel the information she needed to contact the jury." As support, Om cites *Wardius v. Oregon*, 412 U.S. 470 (1973), which addresses, as he asserts, the relationship between due process and reciprocal discovery.

In *Wardius*, the Supreme Court held unconstitutional an Oregon statute that precluded a criminal defendant's introduction of alibi defense evidence in the absence of notice to the prosecution prior to the start of trial. *Id*. at 472. The court held the statute violated due process because it did not provide reciprocal discovery rights for defendants. *Id*. *Wardius*

10

applies to a state's one-sided requirement that the defense tender to the prosecution pre-trial discovery information; the case does not clearly establish a due process right to post-trial juror information. Application of the rule of *Wardius* does not entitle Om to relief. *See Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004) ("Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.").

It further appears that no Supreme Court precedent clearly establishes a due process right to post-trial juror information under the circumstances of Om's case. The Sixth and Fourteenth Amendments guarantee a criminally accused the right to trial by an impartial jury. *See Duncan v. Louisiana*, 391 U.S. 145 (1968). Nevertheless, the Supreme Court has recognized "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Rushen v. Spain*, 464 U.S. 114, 118 (1983) (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982). "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith*, 455 U.S. at 217.

When juror partiality is alleged, the United States Supreme Court "has long held that the remedy... is a hearing in which the defendant has the opportunity to prove actual bias." *Smith*, 455 U.S. at 215; *but see Sims v. Rowland*, 414 F.3d 1148, 1153 (9th Cir. 2005) (observing that neither *Smith* nor any other Supreme Court case mandates a hearing when evidence of juror bias is raised). A thorough search reveals no Supreme Court precedent regarding a criminal defendant's right to compel the release of juror contact information in relation to a post-trial investigation of alleged juror misconduct or partiality. Absent controlling precedent, Om is not entitled to federal habeas corpus relief. *Wright v. Van Patten*, 128 S. Ct. 743, 747 (2008) (where there is "no clear answer to the question presented," it cannot be said that the state court unreasonably applied clearly established federal law); *see also* 28 U.S.C. §2254(d)(1).

Moreover, the trial court reasonably rejected Om's request for release of juror information. As discussed by the state appellate court, there was no reliable, admissible evidence on which to base the request. Granting juror contact information would have facilitated what can

only be characterized as a fishing expedition by the defense.  Om fails to demonstrate that the state appellate court's rejection of the claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

## VI.  CONCLUSION

For the foregoing reasons, the petition should be denied.  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be denied; and

2. A certificate of appealability not issue.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  Any reply to the objections shall be filed and served within seven days after service of the objections.

DATED: March 19, 2012

_Charlene H. Sorrentino_
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE